164 P.3d 454 (2007)
Robert C. WOO, D.D.S., and Anne M. Woo, husband and wife; and the marital community composed thereof, Petitioners,
v.
FIREMAN'S FUND INSURANCE COMPANY, a California corporation; and National Surety Corporation, an Illinois corporation, Respondents,
Depositors Insurance Company, an Iowa corporation; and the Pacific Underwriters Corporation, a Washington corporation, Defendants.
No. 77684-9.
Supreme Court of Washington, En Banc.
Argued September 12, 2006.
Decided July 26, 2007.
*456 Richard B. Kilpatrick, Bellevue, WA, Richard Andrew Bergh, Law Office of Andrew Bergh PS, Seattle, WA, Charles Kenneth Wiggins, Wiggins & Masters PLLC, Bainbridge Island, WA, for Petitioners.
Michael Simpson Rogers, Reed McClure, Seattle, WA, for Defendants.
Michael Barr King, Talmadge Law Group PLLC, Tukwila, WA, Michael Henry Runyan, Lane Powell PC, Emilia L. Sweeney, Lane Powell PC, Seattle, WA, for Respondents.
Bryan Patrick Harnetiaux, Spokane, WA, Amicus Curiae on behalf of Washington State Trial Lawyers Association Foundation.
FAIRHURST, J.
¶ 1 This case arises from a practical joke that an oral surgeon, Dr. Robert C. Woo, played on an employee, Tina Alberts, while *457 he was performing a dental procedure on her. Alberts brought suit against Woo as a result of the practical joke, and Woo asked his insurer, Fireman's Fund Insurance Company[1] (Fireman's), to defend him, claiming coverage under the professional liability, employment practices liability, and general liability provisions of his insurance policy. Fireman's refused Woo's request to defend.
¶ 2 Woo brought suit against Fireman's, claiming breach of duty to defend, bad faith, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court granted Woo's motion for partial summary judgment, holding that Fireman's had a duty to defend under all three provisions. After trial on the bad faith and CPA claims, a jury found by special verdict that Fireman's failed to act in good faith and violated the CPA. Division One of the Court of Appeals reversed, holding that Fireman's had no duty to defend. Woo seeks review of the Court of Appeals ruling and attorney fees and costs on appeal.
¶ 3 We partially reverse the Court of Appeals and reinstate the trial court's judgment based on the jury's verdict. We hold that Fireman's had a duty to defend under the professional liability and general liability provisions but not under the employment practices liability provision. We grant Woo's request for attorney fees and costs on appeal.

I. STATEMENT OF THE CASE
¶ 4 Alberts worked for Woo as a dental surgical assistant for about five years. Her family raised potbellied pigs, and she often talked about them at work. She claims that over the course of her employment, Woo made several offensive comments about her pigs. Woo claims his comments about Alberts' pigs were part of a "friendly working environment" he encouraged in the office. Br. of Resp'ts at 4-5.
¶ 5 The event that precipitated this case occurred during a procedure Woo agreed to perform for Alberts to replace two of her teeth with implants. The procedure required Woo to install temporary partial bridges called "flippers" as spacers until permanent implants could be installed. Pet. for Review at 3. When he ordered the flippers for Alberts' procedure, Woo also ordered a second set of flippers shaped like boar tusks to play a practical joke on Alberts.[2] While Alberts was under anesthesia, Woo and his staff removed Alberts' oxygen mask, inserted the boar tusk flippers in her mouth and took photographs of her, some with her eyes pried open. After taking the photographs, Woo completed the planned procedure and inserted the normal flippers.
¶ 6 Woo subsequently had the photographs developed but claims that when he saw them he concluded they were ugly and should not be shown to Alberts. He also claims he told another surgical assistant he thought the photographs were ugly. He claims that he did not expect his staff to give them to Alberts before talking with him. However, about a month later, Woo's staff gave Alberts the photographs at a gathering to celebrate her birthday. Stunned, Alberts proceeded to assist in a dental surgery procedure after receiving the photographs but after that procedure, she went home and never returned to her job. Woo called Alberts several times and wrote to apologize, but Alberts did not respond.
¶ 7 Shortly thereafter, Alberts filed suit against Woo alleging outrage, battery, invasion of privacy, false light, public disclosure *458 of private acts, nonpayment of overtime wages, retaliation for requesting payment of overtime wages, medical negligence, lack of informed consent, and negligent infliction of emotional distress. At the time of Alberts' suit, Woo's policy contained provisions for professional liability, employment practices liability, and general liability.[3] About five months after Alberts filed suit, Fireman's notified Woo that his policy did not cover the claims asserted in Alberts' suit and declined to fund his defense.
¶ 8 Fireman's refused to defend under the professional liability provision on the grounds that the acts alleged in Alberts' complaint did not arise out of the provision of dental services. It refused to defend under the employment practices liability provision on the grounds that the complaint did not allege sexual harassment, discrimination, or wrongful discharge as those terms were defined by the policy. It refused to defend under the general liability provision on the grounds that the alleged practical joke was intentional and was not considered a "business activity." Pl.Ex. 25, at 7.
¶ 9 Because Fireman's refused to defend him, Woo paid attorney John Versnel to defend him against Alberts' suit and settled with Alberts just prior to trial for $250,000. Woo then brought suit against Fireman's alleging breach of duty to defend under the professional, employment practices, and general liability provisions of Woo's insurance policy, bad faith, and violation of the CPA. He further alleged that Fireman's was estopped from denying coverage under the policy as a result of its breach of the duty to defend.
¶ 10 The parties submitted cross motions for summary judgment.[4] The trial court granted Woo's motion for partial summary judgment holding that Fireman's breached its duty to defend.
¶ 11 Following trial on the bad faith and CPA issues, a jury found that Fireman's failed to act in good faith, violated the CPA, and awarded Woo damages in the amount of $750,000. The trial court entered judgment against Fireman's and awarded damages under the jury verdict, attorney fees and costs pursuant to Olympic Steamship Co. v. Centennial Insurance Co., 117 Wash.2d 37, 811 P.2d 673 (1991), and recovery of the $250,000 settlement Woo negotiated with Alberts.
¶ 12 Fireman's appealed to the Court of Appeals, Division One. Woo v. Fireman's Fund Ins. Co., 128 Wash.App. 95, 114 P.3d 681 (2005). The Court of Appeals reversed the trial court's summary judgment order regarding duty to defend and instructed the trial court to vacate the jury's verdict and dismiss the case. The Court of Appeals did not reach Fireman's remaining issues on appeal. Id. at 118, 114 P.3d 681. Woo petitioned this court for review, which we accepted. Woo v. Fireman's Fund Ins. Co., 156 Wash.2d 1035, 134 P.3d 1171 (2006). Woo also requests attorney fees and costs on appeal.

II. ISSUES
A. Did Fireman's have a duty to defend Woo under the professional liability, employment practices liability, and general liability provisions of his insurance policy?
B. Do other issues raised by Fireman's at the Court of Appeals have merit?
C. Is Woo entitled to attorney fees and costs on appeal?

III. ANALYSIS
¶ 13 An appellate court reviews a partial summary judgment order de novo and engages in the same inquiry as the trial court. Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 692 n. 17, 15 *459 P.3d 115 (2000). Interpretation of an insurance contract is a question of law reviewed de novo. Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990), overruled on other grounds by Butzberger v. Foster, 151 Wash.2d 396, 89 P.3d 689 (2004). When we construe the language of an insurance policy, we give it the same construction that an "average person purchasing insurance" would give the contract. Id.
A. The duty to defend
¶ 14 The rule regarding the duty to defend is well settled in Washington and is broader than the duty to indemnify. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 64, 1 P.3d 1167 (2000). The duty to defend "arises at the time an action is first brought, and is based on the potential for liability." Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002) (emphasis added). An insurer has a duty to defend "`when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" Id. (quoting Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 425, 983 P.2d 1155 (1999)). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." Id. (citing Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 561, 951 P.2d 1124 (1998)). Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." Id. (citing R.A. Hanson Co. v. Aetna Ins. Co., 26 Wash.App. 290, 295, 612 P.2d 456 (1980)).[5] In contrast, the duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." Hayden, 141 Wash.2d at 64, 1 P.3d 1167 (emphasis added). In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability.
¶ 15 "There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." Truck Ins., 147 Wash.2d at 761, 58 P.3d 276. First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. Id. Notice pleading rules, which require only a short and plain statement of the claim showing that the pleader is entitled to relief, impose a significant burden on the insurer to determine if there are any facts in the pleadings that could conceivably give rise to a duty to defend. Hanson, 26 Wash.App. at 294, 612 P.2d 456. Second, if the allegations in the complaint "`"conflict with facts known to or readily ascertainable by the insurer,"'" or if "`"the allegations . . . are ambiguous or inadequate,"'" facts outside the complaint may be considered. Truck Ins., 147 Wash.2d at 761, 58 P.3d 276 (quoting Atl. Mut. Ins. Co. v. Roffe, Inc., 73 Wash.App. 858, 862, 872 P.2d 536 (1994) (quoting E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 908, 726 P.2d 439 (1986))). The insurer may not rely on facts extrinsic to the complaint to deny the duty to defendit may do so only to trigger the duty. Id.
¶ 16 The duty to defend is a valuable service paid for by the insured and one of the *460 principal benefits of the liability insurance policy. Grifin v. Allstate Ins. Co., 108 Wash. App. 133, 138, 29 P.3d 777, 36 P.3d 552 (2001); Safeco Ins. Co. v. Butler, 118 Wash.2d 383, 392, 823 P.2d 499 (1992); Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 390, 715 P.2d 1133 (1986); THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 11.1, at 11-1, 11-2 (2d ed.2006). If the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend. Truck Ins., 147 Wash.2d at 761, 58 P.3d 276 (citing Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 93-94, 776 P.2d 123 (1989)). Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach. Id.
1. Professional liability provision
¶ 17 Woo makes three basic arguments with regard to Fireman's duty to defend under the professional liability provision. First, he argues that the insertion of boar tusk flippers in Alberts' mouth constituted the practice of dentistry as defined in his policy and RCW 18.32.020. Second, he argues that the Court of Appeals improperly extended the "sexual misconduct" rule from Standard Fire Insurance Co. v. Blakeslee, 54 Wash.App. 1, 771 P.2d 1172 (1989) in concluding that Woo's actions did not constitute the practice of dentistry. Lastly, he argues that application of Blakeslee to the facts of this case was uncertain and Fireman's had a duty to defend until the rule was clarified by the court.
a. Conduct falling within the definition of the practice of dentistry
¶ 18 The professional liability provision states that Fireman's will defend any claim brought against the insured "even if the allegations of the claim are groundless, false or fraudulent." NSW at 000080. It defines "dental services" as "all services which are performed in the practice of the dentistry profession as defined in the business and professional codes of the state where you are licensed." NSW at 000102. RCW 18.32.020 defines the practice of dentistry and states:
A person practices dentistry, within the meaning of this chapter, who (1) represents himself as being able to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, or jaw, or (2) offers or undertakes by any means or methods to diagnose, treat, remove stains or concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same, or take impressions of the teeth or jaw, or (3) owns, maintains or operates an office for the practice of dentistry, or (4) engages in any of the practices included in the curricula of recognized and approved dental schools or colleges, or (5) professes to the public by any method to furnish, supply, construct, reproduce, or repair any prosthetic denture, bridge, appliance, or other structure to be worn in the human mouth.
¶ 19 Woo argues that the Court of Appeals erred in concluding the insertion of boar tusk flippers in Alberts' mouth did not constitute the practice of dentistry as defined in RCW 18.32.020. He claims the joke was "intertwined with employee and patient relationships, areas of Woo's ownership and operation of the dental office." Suppl. Br. of Pet'r Woo at 5. Fireman's responds that the allegations in Alberts' complaint unambiguously establish that Woo's practical joke was not connected to treating Alberts' condition. It asserts the boar tusk flippers were not intended to replace Alberts' teeththey were intended only as a practical joke. Fireman's also asserts that insertion of the boar tusk flippers was not covered under the professional liability provision because Woo "interrupted his rendering of dental services." Resp'ts' Answer to Br. of Amicus Curiae Washington State Trial Lawyers Association Foundation (WSTLA Foundation) at 5.
¶ 20 The Court of Appeals based its conclusion that Fireman's had no duty to *461 defend Woo under the professional liability provision on two flawed premises. First, it concluded, "[n]o reasonable person could believe that a dentist would diagnose or treat a dental problem by placing boar tusks in the mouth while the patient was under anesthesia in order to take pictures with which to ridicule the patient." Woo, 128 Wash.App. at 103, 114 P.3d 681. As we note in footnote 5, supra, what a reasonable patient would believe a dentist would do is irrelevant to our determination of whether Fireman's had a duty to defend under the professional liability provision. Rather, the rule requires us to determine whether the complaint alleged facts that were conceivably covered under the insurance policy.
¶ 21 Second, the Court of Appeals erred in concluding Fireman's had no duty to defend Woo under the professional liability provision because Woo's actions "could not conceivably be considered a means or method `to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition.'" Woo, 128 Wash.App. at 103, 114 P.3d 681 (quoting RCW 18.32.020). The court's definition of what Woo's policy conceivably covers was overly constrained. In addition to covering the rendering of dental services, the professional liability provision covers ownership, maintenance, or operation of an office for the practice of dentistry and Alberts' complaint alleged Woo's practical joke took place while Woo was conducting his dental practice. The insertion of the boar tusk flippers was also intertwined with Woo's dental practice because it involved an interaction with an employee. In fact, that employee interaction was as much a part of his dental practice as the rendering of dental services to his patients.
¶ 22 Moreover, Woo's practical joke did not interrupt the dental surgery procedure, as Fireman's argues. After administering anesthesia and preparing Alberts for surgery, Woo inserted the boar tusk flippers, took photographs, removed the boar tusk flippers, and inserted another set of flippers. The acts that comprised the practical joke were integrated into and inseparable from the overall procedure.
¶ 23 In sum, Alberts' complaint alleges that Woo inserted a flipper, albeit oddly shaped, during a dental surgery procedure while he was operating an office for the practice of dentistry. The rule for determining whether an insurer has a duty to defend only requires the complaint to allege facts that could impose liability on the insurer. Truck Ins., 147 Wash.2d at 760, 58 P.3d 276. Because RCW 18.32.020 defines the practice of dentistry so broadly, the fact that his acts occurred during the operation of a dental practice conceivably brought his actions within the professional liability provision of his insurance policy.
¶ 24 We conclude that Fireman's had a duty to defend under Woo's professional liability provision because the insertion of boar tusk flippers in Alberts' mouth conceivably fell within the policy's broad definition of the practice of dentistry.
b. Extension of Blakeslee
¶ 25 Woo next argues that in concluding that his practical joke did not constitute the practice of dentistry, the Court of Appeals improperly extended Blakeslee to include more than just sexual assault. He argues that Blakeslee should apply only in a sexual assault context because sexual contact during dental treatment presumes intent to injure whereas the same does not hold true for "an innocently conceived group joke." Suppl. Br. of Pet'r Woo at 8. Fireman's counters that Blakeslee merely stands for the general proposition that an insured should not expect insurance coverage to apply to problems that fall outside the policy coverage. It also claims the court did not apply the "intent to injure" rule of sexual assault cases with regard to the professional liability provisionit only applied settled law to a unique set of facts. Resp'ts' Answer to Amicus Curiae WSTLA's [Foundation] Memo. in Support of Pet. for Review at 3.
¶ 26 Blakeslee involved a dentist accused of sexually assaulting a patient during a dental procedure while the patient was under the influence of nitrous oxide. 54 Wash.App. at 2, 771 P.2d 1172. The court noted that medical malpractice insurance policies do not cover a physician's sexual contact with a patient. *462 Id. at 8-9, 771 P.2d 1172 (citing Wash. Ins. Guar. Ass'n v. Hicks, 49 Wash.App. 623, 627, 744 P.2d 625 (1987) (a gynecologist's sexual assault of a patient)). It concluded, therefore, that because there could be no legitimate course of treatment involving sexual contact between a dentist and a patient, the dentist's insurance policy did not cover his actions. Id. at 9, 771 P.2d 1172.
¶ 27 The Court of Appeals analogized the facts of this case to Blakeslee by noting that, like Blakeslee, Woo took advantage of Alberts' anesthetized state for his own purposes. Woo, 128 Wash.App. at 104, 114 P.3d 681. It also analogized this case to Blakeslee on the grounds that the professional services that Woo rendered were not the proximate cause of Alberts' injuries. Id.
¶ 28 We conclude the Court of Appeals improperly analyzed the significance of the act at issue by focusing only on the facts that Woo inserted the boar tusk flippers for his own purposes and the injuries did not arise from the treatment Alberts requested. It ignored the fact that application of Blakeslee to other contexts could inappropriately narrow the duty to defend. It also failed to consider that sexual contact is never an appropriate component of dental treatment whereas other actions could conceivably fall within the broad definition set out in the insurance policy and RCW 18.32.020.[6]
¶ 29 Additionally, the Court of Appeals failed to recognize that the Blakeslee analysis was based on the duty to indemnify, not the duty to defend. Woo, 128 Wash.App. at 103, 114 P.3d 681. The insurer in Blakeslee properly defended under a reservation of rights and sought a declaratory judgment. Blakeslee, 54 Wash.App. at 3, 771 P.2d 1172. Blakeslee's analysis, therefore, focused on whether the insurance policy actually provided coverage. In contrast, our focus in this case is whether the facts alleged in the complaint conceivably triggered a duty on the part of Fireman's to defend. Thus, Blakeslee does not even provide the proper framework for our analysis.
¶ 30 We conclude that the Court of Appeals improperly extended Blakeslee to a nonsexual assault context.
c. Refusal to defend when there was an undetermined rule of law
¶ 31 Finally, Woo argues that application of Blakeslee to the facts of this case was uncertain at best and Fireman's had a duty to defend until and unless application of the rule in this particular context was clarified by the court. Amicus WSTLA Foundation agrees, arguing that under the "complaint allegation rule," an insurer is obligated to err in favor of defending the insured if the law is uncertain "at the time [the insurer] was required to decide whether to provide [the insured] a defense." Br. of Amicus Curiae WSTLA Foundation at 21 (emphasis omitted). WSTLA Foundation also challenges Fireman's argument to the Court of Appeals that if a legal issue is "fairly debatable" at the time an insured requests defense, the insurer may refuse. Id. at 22, 771 P.2d 1172; Appellants Opening Br. at 24-26 & n. 12, 49-53.
¶ 32 Fireman's obtained a formal written legal opinion from attorney Stephen G. Skinner, who advised that Fireman's did not have a duty to defend under the professional liability provision based on Blakeslee and Hicks. Skinner's opinion acknowledged, however, that neither Blakeslee nor Hicks were entirely on point and that a court reviewing them might conclude they relate only to cases involving sexual assault.
¶ 33 Fireman's reliance on Skinner's equivocal advice regarding the application of *463 Blakeslee or Hicks to this case flatly contradicts one of the most basic tenets of the duty to defend. The duty to defend arises based on the insured's potential for liability and whether allegations in the complaint could conceivably impose liability on the insured. Truck Ins., 147 Wash.2d at 760, 58 P.3d 276. An insurer is relieved of its duty to defend only if the claim alleged in the complaint is "clearly not covered by the policy." Id. Moreover, an ambiguous complaint must be construed liberally in favor of triggering the duty to defend. Id.
¶ 34 Fireman's is essentially arguing that an insurer may rely on its own interpretation of case law to determine that its policy does not cover the allegations in the complaint and, as a result, it has no duty to defend the insured. However, the duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, Fireman's did the oppositeit relied on an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured.
¶ 35 We conclude that Fireman's inappropriately relied on Blakeslee to deny Woo a defense.
2. Employment practices liability provision
¶ 36 The employment practices liability provision states that Fireman's will defend any claim brought against the insured "even if the allegations of the claim are groundless, false or fraudulent." NSW at 000094. It further states, in pertinent part, that Fireman's will "pay all sums which you . . . are legally required to pay as damages as a result of sexual harassment, discrimination, or wrongful discharge that arise out of a wrongful employment practice." Id. Woo and Fireman's do not argue that anything other than wrongful discharge applies here. "Wrongful discharge" is defined, in pertinent part, as "the unfair or unjust termination of an employment relationship which . . . inflicts emotional distress upon the employee, defames the employee, [or] invades the employee's privacy." NSW at 000106. "Wrongful employment practice" is defined, in pertinent part, as "any negligent act, error, omission, or breach of duty committed in the course of . . . relations with employees." Id.
¶ 37 Woo argues Fireman's had a duty to defend him under the employment practices liability provision because Alberts' complaint can reasonably be read to include allegations of negligent acts that led to an involuntary or constructive discharge.[7] Fireman's counters that even if the joke qualified as a wrongful employment practice, it did not trigger the duty to defend because the complaint did not allege that the wrongful discharge arose out of the wrongful employment practice and that the emotional distress resulted from the wrongful discharge. Instead, Fireman's argues Alberts alleged that the wrongful employment practice caused her emotional distress and the emotional distress caused her to leave her job. The Court of Appeals agreed, basing its conclusion that Alberts did not allege constructive discharge on the fact that the complaint did not allege violation of an employment contractonly violation of the insurance policy to which she was not a party. Woo, 128 Wash.App. at 105, 114 P.3d 681.
¶ 38 Alberts' complaint alleged that Woo frequently taunted her about her potbellied pigs. It also alleged that after the office *464 staff showed her the photographs she assisted with a surgical procedure and during that procedure Woo told her she could take the boar tusk flippers home as a trophy. After the procedure, Alberts collapsed in tears and then told the office manager not to have anyone contact her, went home, and never returned. These facts indicate that Alberts' emotional distress resulted from the taunting and the practical joke, not from a wrongful discharge. Thus, they do not meet the definition of wrongful discharge under Woo's policy.
¶ 39 We conclude Fireman's had no duty to defend under Woo's employment practices liability provision because Alberts' complaint clearly did not allege actions that met the definition of wrongful discharge under the policy.
3. General liability provision
¶ 40 The general liability provision covers bodily injury, personal injury, advertising injury, and property damage. Only the bodily injury and personal injury portions apply in this case.
a. Bodily injury
¶ 41 "Bodily injury" is defined as "bodily harm, sickness or disease," NSW at 000102, and is covered under the general liability coverage if "caused by an occurrence." NSW at 000032. "Occurrence" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." NSW at 000045. "Accident" is defined as a "fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured." NSW at 000043.
¶ 42 Woo argues that Alberts' complaint should be construed liberally in his favor as triggering a duty to defend because the complaint alleged both intentional and negligent conduct resulting in bodily injury.[8] Fireman's counters that the inclusion of negligence causes of action in Alberts' complaint did not render the complaint ambiguous regarding whether Woo's conduct was intentional. Fireman's suggests that any ambiguity must be found in the complaint's factual allegations, arguing that none of the conduct alleged in the complaint was accidental or fortuitous.
¶ 43 The Court of Appeals agreed with Fireman's and concluded that any bodily injury alleged in Alberts' complaint[9] did not result from an accident as defined in the policy because the complaint alleged exclusively intentional conduct. Woo, 128 Wash. App. at 106, 114 P.3d 681. It also concluded that even if Woo had second thoughts about giving Alberts the photographs, that fact would not render the allegations in Alberts' complaint ambiguous because the conduct related to taking the photographs was intentional. Id.
¶ 44 Alberts' complaint alleged that Woo repeatedly taunted her about her pigs and that Woo or an assistant working under his supervision ordered boar tusk flippers, placed the flippers in her mouth, pried her eyes open, took photographs of her with the flippers in her mouth, had the photographs developed, and gave the photographs to her. However, three of the claims listed in Alberts' complaint alleged negligent causes of actionmedical negligence, lack of informed consent, and negligent infliction of emotional distress.
¶ 45 The insurer's duty to defend is triggered if a complaint is ambiguous. Truck Ins., 147 Wash.2d at 760, 58 P.3d 276. The insured must be given the benefit of the *465 doubt if it is not clear from the face of the complaint that the policy does not provide coverage. Id. at 761, 58 P.3d 276. In short, if it is not clear that the complaint does not contain allegations that are not covered by the policy, the insurer has a duty to defend.
¶ 46 Woo's policy covers bodily injury that is caused by an "accident," which is defined as a "fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured." NSW at 000043 (emphasis added). The Court of Appeals limited its analysis of the bodily injury coverage to whether Alberts' complaint alleged exclusively intentional conduct. However, based on the language of Woo's policy, he had to have "expected or intended" the specific "event or happening" alleged in the complaint. Thus, he would have to have intended not only the "event or happening" of photographing her with the boar tusk flippers in her mouth but also the "event or happening" that Alberts would sustain the specific injuries she alleged in her complaint. Although Woo's conduct was likely intentional, it is conceivable that Woo did not intend that conduct to result in Alberts' injuries.
¶ 47 Moreover, Woo's policy covers "continuous or repeated exposure to substantially the same general harmful conditions." NSW at 000045. Woo's "taunts" and the practical joke could have been part of Woo's "continuous or repeated" efforts to cultivate a "friendly working environment" in the office. NSW at 000045; Br. of Resp'ts at 4-5.
¶ 48 We conclude it is not clear that Alberts' complaint does not contain allegations that are not covered by Woo's policy and Fireman's had a duty to defend him under the bodily injury portion of the general liability provision.
b. Personal injury
¶ 49 "Personal injury" is defined, in pertinent part, as "harm that arises out of one or more of the following offenses: assault, battery, mental anguish, mental shock or humiliation; . . . [or] invasion of an individual's right of privacy." NSW at 000105. Personal injury is covered under the general liability coverage if it is "caused by an offense arising out of your business." NSW at 000032 (emphasis added). "Offense" is defined as "a fortuitous, inadvertent or mistaken business activity giving rise to . . . personal injury neither expected nor intended from the standpoint of the insured." NSW at 000045. "Your business" is defined as "the trade, profession or occupation in which you are engaged and which is shown on the declarations page." NSW at 000047.
¶ 50 Our analysis of Woo's intent to cause personal injury is comparable to our analysis of his intent to cause bodily injury. Alberts' complaint alleged that Woo taunted her about her pigs and that he played an arguably offensive practical joke on her but Woo claims he did so only in an effort to create a "friendly working environment" in his business office. Br. of Resp'ts at 4-5. As with bodily injury, Woo's policy covers personal injury if caused by a "fortuitous, inadvertent or mistaken business activity giving rise to . . . personal injury neither expected nor intended from the standpoint of the insured." NSW at 000045 (emphasis added). Because, as we concluded above, Alberts' complaint did not clearly allege that Woo expected or intended that his taunts or the practical joke would cause personal injury to Alberts, Fireman's had a duty to defend him.
¶ 51 Woo also argues the Court of Appeals erroneously applied a Louisiana case when it concluded that any personal injury alleged in Alberts' complaint was not caused by an "offense arising out of your business," NSW at 000032, because "the particular activities engaged in at the time of the injury were ordinarily incident to business pursuits." Woo, 128 Wash.App. at 107, 114 P.3d 681 (citing Jackson v. Frisard, 96-0547 (La.App. 1 Cir.1996 12/20/96), 685 So.2d 622, 629). Woo disputes the court's interpretation of Jackson and argues that because there was no exception to the policy for practical jokes, it covered anything that occurred in the context of running a dental office. He claims the court's focus ignored all conduct unrelated to the core functions of the business. Fireman's counters that the mere fact that an employer plays a joke on an employee at *466 the office does not convert it into a business activity.[10]
¶ 52 Jackson involved an injury incurred when state troopers engaged in horseplay during a defensive training session. 685 So.2d at 624. The insurance provision at issue excluded coverage for bodily injury arising out of business pursuits of the insured, but the exclusion did not apply to "`activities which are ordinarily incident to non-business activities.'" Id. at 629 (quoting policy). Jackson held that the trooper's actions were the type of activity that were "ordinarily incident to non-business pursuits," and were not subject to the policy exclusion. Id. at 631. Thus, contrary to Woo's assertion, the Court of Appeals properly interpreted the insurance policy in Jackson as providing coverage for personal injury arising from acts that were not ordinarily incident to business pursuits. It also properly concluded that the policy in this case provided coverage for personal injury arising from the business. Woo, 128 Wash.App. at 107, 114 P.3d 681.
¶ 53 We conclude the Court of Appeals erred in determining that Woo's conduct did not arise from his business. We hold Fireman's had a duty to defend him under the personal injury portion of the general liability provision. Alberts' complaint alleged that Woo's staff participated in playing a practical joke on a colleague during the course of a dental procedure that was undoubtedly part of Woo's business. Woo's policy language provides broad coverage for personal injuries "arising from" his business, and the definition of "your business" is equally broadly defined.
¶ 54 We partially reverse the Court of Appeals and reinstate the trial court's judgment based on the jury's verdict. We hold that the court erred in concluding that Fireman's had no duty to defend Woo under the professional liability and general liability provisions but it did not err in concluding that Fireman's had no duty to defend under the employment practices liability provision. We also hold that the court improperly extended Blakeslee to a nonsexual assault context and Fireman's improperly relied on Blakeslee as a basis for refusing to defend Woo.
B. Other issues Fireman's raised at the Court of Appeals
¶ 55 The Court of Appeals did not resolve certain issues because it determined that Fireman's had no duty to defend Woo. RAP 13.7 requires us to either consider and decide those issues or remand the case to the Court of Appeals to decide them. We elect to decide them rather than remand to the Court of Appeals.
¶ 56 Fireman's raised four additional arguments at the Court of Appeals: (1) that the jury's bad faith and CPA violation verdict could not be upheld on appeal if the Court of Appeals found that Fireman's correctly declined to defend Woo on only some of the policy provisions, (2) that the jury verdict could not be upheld because the trial court erred in instructing the jury that Fireman's had breached its duty to defend, (3) that the trial court erred in resolving its claim of collusion in the settlement between Woo and Alberts, and (4) that the trial court erred in denying relief from emotional distress damages the jury awarded to Woo based on Fireman's refusal to defend him.
1. A new trial is not warranted if the Court of Appeals is reversed on only some provisions of the insurance policy
¶ 57 Fireman's argues that if the Court of Appeals is reversed on only some of the duty to defend claims, it should remand for new trial because there was insufficient proof of bad faith if Fireman's correctly refused *467 to defend with regard to some of the claims. Fireman's admits, however, that the bulk of Woo's case revolved around the professional liability provision. Woo argues that Fireman's waived this issue because it failed to propose a special verdict identifying the coverages under which the jury found bad faith.
¶ 58 Because Fireman's acknowledges that the bulk of Woo's case related to the professional liability provision and we reverse the Court of Appeals with respect to that provision, we conclude the jury's verdict that Fireman's acted in bad faith is not compromised and a new trial is not warranted.
2. The trial court did not err in instructing the jury that Fireman's breached its duty to defend
¶ 59 Fireman's claims that the trial court erred in instructing the jury that Fireman's breached its duty to defend. The trial court's instruction stated:
The issues for you to decide are whether defendant Fireman's Fund failed to act in good faith in handling and investigating Dr. Woo's claim, and whether defendant Fireman's Fund violated the Washington Consumer Protection Act. The Court has already determined that defendant Fireman's Fund erred in not defending Dr. Woo. However, an insurance company can be in error in its determination on the duty to defend and not be in bad faith so long as its determination was not unreasonable, frivolous or unfounded. The Court's earlier decision on the duty to defend does not control your decisions in this case.
Clerk's Papers (CP) at 3559.
¶ 60 Fireman's seems to think the instruction was erroneous because it left the jury to wonder about coverage. However, the jury was not asked to determine if the policy provided coverage. Woo sought a declaration that Fireman's was estopped from denying coverage based on the duty to defend determination. The jury was asked only to determine if Fireman's acted in bad faith and in violation of the CPA by refusing to defend.
¶ 61 We conclude the trial court did not err in instructing the jury that Fireman's breached its duty to defend.
3. The trial court did not err in resolving Fireman's claim of collusion in the settlement between Woo and Alberts
¶ 62 Fireman's claims the trial court erroneously resolved its claim of collusion in the settlement between Woo and Alberts. It argues that the court conflated the purpose of the reasonableness hearing with the question of whether the agreement was the result of fraud or collusion, thereby failing to conduct the appropriate analysis.
¶ 63 Woo responds that the court analyzes collusion twice, (1) in evaluating the reasonableness of the settlement and (2) in determining whether the settlement was the result of fraud or collusion. Once the court determines the settlement is reasonable, Fireman's has the burden of proving collusion and it failed to provide such evidence at trial. Truck Ins., 147 Wash.2d at 765, 58 P.3d 276. In contrast, Woo cited testimony of attorney John Versnel, who stated unequivocally that the settlement was "devoid of any bad faith, collusion or fraud." Br. of Resp'ts at 48-49. Woo challenged the list of cases cited by Fireman's in which the insured escaped liability, noting that he did not, and noted that Fireman's never provided any suggestions regarding what a reasonable settlement would have been. Finally, Woo pointed to extensive evidence that he mounted a vigorous defense prior to settling with Alberts.
¶ 64 We conclude the trial court did not err in resolving Fireman's collusion claim regarding the settlement between Woo and Alberts.
4. The trial court did not err in denying relief from emotional distress damages the jury awarded to Woo based on Fireman's refusal to defend him
¶ 65 Fireman's argues that the trial court erred in denying relief from the jury's award of damages for emotional distress based on Fireman's refusal to defend him. Appellants' Opening Br. at 66-67. It claims that Woo failed to present evidence about his emotional *468 distress, other than his own testimony. Id. The court acknowledged that the damages could be viewed as "extraordinarily high given the absence of any medical, psychiatric or expert testimony," but noted that Fireman's provided "virtually no authority or support for [its] argument" and the court could not substitute its judgment for that of the jury. CP at 3969.
¶ 66 We conclude the trial court did not err in denying Fireman's relief from the jury's damages award.
C. Attorney fees and costs on appeal
¶ 67 The trial court awarded Woo fees under Olympic Steamship for Fireman's breach of the common law duty of good faith and under the CPA. Woo requested fees on appeal in his brief to the Court of Appeals and in his supplemental brief to this court under Svendsen v. Stock, 143 Wash.2d 546, 560, 23 P.3d 455 (2001) and Amazon. com International, Inc. v. American Dynasty Surplus Lines Insurance Co., 120 Wash.App. 610, 619-20, 85 P.3d 974, review denied 152 Wash.2d 1030, 103 P.3d 200 (2004).[11]
¶ 68 Attorney fees are recoverable at trial, and if the plaintiff prevails on appeal, under the CPA. Svendsen, 143 Wash.2d at 560, 23 P.3d 455. In a duty to defend action, an insured is entitled to fees on appeal, pursuant to RAP 18.1, because the insurer "compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." Olympic Steamship, 117 Wash.2d at 53, 811 P.2d 673. Under RAP 18.1, a party has a right to recover reasonable attorney fees or expenses on review before the Supreme Court if granted by applicable law. The party must request fees and costs in its opening brief, but a request made at the Court of Appeals is considered a continuing request at the Supreme Court. RAP 18.1(b). Because Woo prevails on appeal and we hold that Fireman's improperly refused to defend him, we grant Woo attorney fees and costs on appeal.

IV. CONCLUSION
¶ 69 We partially reverse the Court of Appeals and reinstate the trial court's judgment based on the jury's verdict. We hold that Fireman's had a duty to defend under the professional liability and general liability provisions but not under the employment practices liability provision. We further hold that the Court of Appeals improperly extended Blakeslee to a nonsexual assault context and Fireman's improperly relied on Blakeslee as a basis for refusing to defend Woo. Fireman's additional issues are without merit. We grant Woo attorney fees and costs on appeal.
WE CONCUR: TOM CHAMBERS, SUSAN OWENS, RICHARD B. SANDERS, and BOBBE J. BRIDGE, Justices.
C. JOHNSON, J. (dissenting).
¶ 70 The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proved, impose liability upon the insured within the policy's coverage. Truck Ins. Exch. v. Van-Port Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002). In her complaint, Tina Alberts alleged that Robert Woo devised a scheme to humiliate her, ordered the boar tusks, placed them in her mouth when she was unconscious, took pictures, had them developed, and told Alberts that she had a trophy to take home.
¶ 71 By these facts, Alberts unambiguously alleges that her injuries were the consequence solely of Woo's intentional conduct, none of which involves providing dental services. Even under the most liberal construction, the complaint's allegations are not conceivably covered. I agree with and would *469 simply adopt the well reasoned opinion by the Court of Appeals.
I CONCUR: BARBARA A. MADSEN, Justice.
J.M. JOHNSON, J. (dissenting).
¶ 72 Dr. Robert C. Woo humiliated an anesthetized employee by inserting faux boar tusks in her mouth while prying her eyes open and photographing the results. Today's majority decision rewards Dr. Woo's obnoxious behavior and allows him to profit handsomely, receiving a total of $750,000, triple the damages paid to the real victim of his intentional offensive and likely tortious conduct. I would hold that Fireman's Fund Insurance, as his professional practices insurer, does not have a duty to defend Dr. Woo for this intentional tortious behavior. Any reasonable person would not define his actions as a dental procedure or an employment practice covered under Woo's insurance policy and our dental practices statute. Therefore, I respectfully dissent.

STATEMENT OF THE CASE
¶ 73 Because I would simply affirm the Court of Appeals' commonsense ruling in this case, I do not reach some of the arguments analyzed by the majority. See majority at 466-68. However, I wish to emphasize at the outset that awarding three quarters of a million dollars in damages to Woo based only on his self-interested testimony, without any expert testimony support whatsoever, is separately egregious. See majority at 467-68 (citing the trial court's observation that damages could be viewed as "`extraordinarily high given the absence of any medical, psychiatric or expert testimony'" (emphasis added)). Dr. Woo's testimony merely dealt with his feelings and purported sleeplessness. He did not offer any documented evidence regarding economic loss at his practice, medical expenses to treat his alleged distress, or any other corroborating proof. The total lack of substantial corroborating evidence clearly triggers the exception to the rule that appellate courts rarely disturb a jury's award. See Bingaman v. Grays Harbor Community Hosp., 103 Wash.2d 831, 835, 699 P.2d 1230 (1985) ("An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice"); see also Hill v. GTE Directories Sales Corp., 71 Wash.App. 132, 140, 856 P.2d 746 (1993). We should order remittitur of the award to Dr. Woo and remand to the trial court. Id.
¶ 74 More important, perhaps, is that the majority's reward of Dr. Woo's unethical and intentional behavior will likely be perceived as an abuse of the tort system. The insurance company must pay Dr. Woo $750,000 in damages, additional attorney fees, and also reimburse the $250,000 that Dr. Woo paid to the real victim. In total, Dr. Woo (and his attorneys) will receive a million dollars more than the amount that his traumatized ex-employee was compensated for this cruel "joke." Br. of Resp't at 27. Ultimately, patients in Washington will pay for Woo's malfeasance through their doctors' higher costs and insurance premiums.

FACTS
¶ 75 Tina Alberts (Ms. Alberts) worked as a surgical assistant for Dr. Woo.[1] She informed Woo that she cared for abandoned pot-bellied pigs and had even named one "Walter." Id. Woo had made remarks such as, "I am going to hunt Walter down and kill him," "I am going to barbecue him," and "I will find him and eat him." Clerk's Papers (CP) at 31. Woo went boar hunting and brought photographs of a dead boar into the office to show Ms. Alberts, as well as a picture of himself in front of a skinned pig hanging on a hook. Woo v. Fireman's Fund Ins. Co., 128 Wash.App. 95, 97, 114 P.3d 681 (2005). Without a trace of irony, Woo claims his comments about pigs were part of a "friendly working environment" he encouraged in his office. Br. of Resp't at 4-5.
¶ 76 Ms. Alberts had two baby teeth that had never been replaced by permanent teeth. Woo told Ms. Alberts that he would replace *470 the baby teeth with permanent implants. Woo, 128 Wash.App. at 98, 114 P.3d 681. On the day of the procedure, Ms. Alberts was given general anesthesia ostensibly so that her baby teeth could be removed. Id.
¶ 77 However, Woo had prepared a pair of artificial boar tusks without Ms. Alberts' knowledge or consent. While Ms. Alberts was anesthetized and sleeping, Woo removed the oxygen mask, inserted the boar tusks in her mouth, and took mocking photographs, some with her eyes pried open. Id. (Because of the anesthesia he had administered, she remained unconscious throughout.) Woo then took out the boar tusks and resumed the dental procedure. CP at 32.
¶ 78 Woo had the pictures developed and prints made at a public photo shop. CP at 33. A few days later, Ms. Alberts was given one wrapped package as a birthday present. Upon opening the package, Ms. Alberts saw the pair of shaped boar tusks "flippers." Moments later, Dr. Woo's assistants gave Ms. Alberts another envelope. This envelope contained pictures of Ms. Alberts, while under anesthesia, with the boar tusks protruding from her mouth while her lips and eyes were pried open. She was stunned. Woo, 128 Wash.App. at 98, 114 P.3d 681. Woo exhibited no remorse at the time, telling Ms. Alberts she "had a trophy to take home." Ms. Alberts suffered severe emotional distress as a result of the experience, left the office, and never returned to work. Id.
¶ 79 Ms. Alberts later filed suit against Woo alleging outrage, battery, invasion of privacy, false light, public disclosure of private acts, nonpayment of overtime wages, retaliation for requesting payment of overtime wages, medical negligence, lack of informed consent, and negligent infliction of emotional distress. Id. Woo's insurance provider (Fireman's) notified Woo that his professional practices policy did not cover the claims asserted in Ms. Alberts' suit.
¶ 80 Woo subsequently hired an attorney to defend him, and Ms. Alberts' lawsuit was settled for $250,000. Woo, 128 Wash.App. at 101, 114 P.3d 681. Woo then brought suit against Fireman's Fund Insurance, alleging a breach of duty to defend under the provisions of the insurance policy, bad faith, and a violation of the Consumer Protection Act, chapter 19.86 RCW. The trial court granted Woo's motion for partial summary judgment, holding that Fireman's breached its duty to defend under the policy. Id. Division One of the Washington Court of Appeals unanimously vacated the trial court decision with instructions to dismiss the case. Id. at 108, 114 P.3d 681. We subsequently granted Woo's petition for review. Woo v. Fireman's Fund Ins. Co., 156 Wash.2d 1035, 134 P.3d 1171 (2006).

ANALYSIS
¶ 81 The majority correctly states that the "insurer has a duty to defend `"when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."'" Majority at 459 (quoting Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002)). "Although the duty to defend is broad, an insurer has no duty to defend claims based on factual allegations that are clearly not covered by the policy." Woo, 128 Wash.App. at 102, 114 P.3d 681.
¶ 82 In order to determine whether the insurer has a duty to defend, we must examine the policy's insuring provisions to see if the complaint's allegations are conceivably covered. See id. at 102-03, 114 P.3d 681 (citing Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 64, 1 P.3d 1167 (2000)). "The [insurance] policy language is to be given the same `"fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."'" Butzberger v. Foster, 151 Wash.2d 396, 401, 89 P.3d 689 (2004) (quoting Overton v. Consol. Ins. Co., 145 Wash.2d 417, 424, 38 P.3d 322 (2002)) (quoting Sears v. Grange Ins. Ass'n, 111 Wash.2d 636, 638, 762 P.2d 1141 (1988)).
¶ 83 Woo claimed that Fireman's had a duty to defend him under three separate provisions in his policy: (1) professional liability, (2) employment practices liability, and (3) general liability. See Pet. for Review. In their opinion, the majority correctly dismisses Woo's employment liability claims, but *471 holds that Fireman's had a duty to defend Woo under both the professional and general liability provisions. Majority at 457 ("We hold that Fireman's had a duty to defend under the professional liability and general liability provisions but not under the employment practices liability provision."). I disagree with this conclusion.
¶ 84 An insured has no right to claim that his insurer must contribute to the expenses of defending intentional torts or noncovered claims. N.Y. Underwriters Ins. Co. v. Doty, 58 Wash.App. 546, 549, 794 P.2d 521 (1990). Here, the proper inquiry is whether a reasonable person would find the insertion of faux boar tusks into the mouth of an unconscious patient to be covered as the practice of dentistry. If not, such actions constitute a noncovered claim.
¶ 85 This court has clearly held that "`[t]he contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective.'" E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 907, 726 P.2d 439 (1986) (quoting Phila. Fire & Marine Ins. Co. v. Grandview, 42 Wash.2d 357, 255 P.2d 540 (1953)).[2]
¶ 86 The Court of Appeals unambiguously applied this reasonable expectation of coverage test. Under this standard, Dr. Woo's actions are not covered by his insurance. The Court of Appeals referred to the dental services definitional statute, RCW 18.32.020, and applied the correct reasonable person standard to interpret the policy. Woo, 128 Wash.App. at 103, 114 P.3d 681. The court noted, "No reasonable person could believe that a dentist would diagnose or treat a dental problem by placing boar tusks in the mouth while the patient was under anesthesia in order to take pictures with which to ridicule the patient." Id. (emphasis added). This court must also apply the average reasonable person standard to determine if a claim is "clearly not covered by the policy." Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 561, 951 P.2d 1124 (1998). In sum, we must determine if Woo's actions are within the scope of covered claims, as reasonably understood by the average insurance purchaser. See E-Z Loader, 106 Wash.2d at 907, 726 P.2d 439; see also Butzberger, 151 Wash.2d at 401, 89 P.3d 689. Using this test, we now proceed at more length to analyze Woo's several claims under sections of the policy.
Professional Liability
¶ 87 Woo contends that the professional liability provision protects him from any claims that allege faulty dental services.[3] Suppl. Br. of Pet'r at 1. He argues that creating the boar tusks and inserting them in Ms. Alberts' mouth was the practice of dentistry. See RCW 18.32.020.[4] Based on a *472 commonsense reading of the relevant provisions and Washington statutes, I strongly disagree.
¶ 88 In his briefing to this court, Woo specifically argues that his invasion of Ms. Alberts' privacy was "dentistry," as defined by subsections (1), (3) and (5) of the statute. Suppl. Br. of Pet'r at 4. However, the grotesque invasion of privacy perpetrated by Woo is not covered by the statutory definition of dentistry as reasonably construed. Clearly, the actionable behavior was the unauthorized porcine "joke," not the eventual and separate proper replacement of Ms. Alberts' teeth.
¶ 89 Woo was not practicing dentistry within the statutory definition when he placed boar tusks in Ms. Alberts' mouth, then pried her eyes open, and took distasteful photographs (which also had no dentistry function, unlike earlier x-rays or impressions).[5] Clearly, the placement of the foreign tusks in Ms. Alberts' mouth was not intended to treat any "disease, pain, injury, deficiency, deformity, or physical condition," and Woo did not represent that the tusks had any therapeutic or cosmetic value. RCW 18.32.020(1). Indeed, he did not tell the patient about these actions. In short, just because Woo is a dentist, does not mean that every act he perpetrates in his office is dentistry.
¶ 90 Next, Woo argues that his joke is covered under RCW 18.32.020(3) because it was "intertwined with employee and patient relationships," although he admits that the actual plan was "ill-conceived in hind-sight." Suppl. Br. of Pet'r at 5. The average person would agree that such relationships require a baseline level of respect for personal and social boundaries. See E-Z Loader, 106 Wash.2d at 907, 726 P.2d 439; see also Butzberger, 151 Wash.2d at 401, 89 P.3d 689. Here, Woo ignored his employee and patient relationships by violating the victim's trust and committing an intentional tort. Woo's stunt was not intertwined with employee relationships, but it perpetrated in spite of them, as an attempt to satisfy his own odd sense of humor. We should reject Woo's strained reasoning as an effort to rewrite an insurance policy to avoid his own responsibility. An average, reasonable person would not consider this unauthorized temporary tusk implantation as "employee relations" or "business operation aspects." Suppl. Br. of Pet'r at 5.
¶ 91 Finally, Woo asserts that faux boar tusks are covered under the statutory definition as a "prosthetic denture, bridge, appliance, or other structure to be worn in the human mouth." RCW 18.32.020(5). The Court of Appeals unanimously rejected this rationale, correctly in my view. Woo, 128 Wash.App. at 103, 114 P.3d 681. The court clearly stated:
While Dr. Woo was clearly rendering dental services when he administered anesthesia, removed Alberts' teeth, and put in the proper flippers, we conclude as a matter of law that when he placed the boar tusks in her mouth and took pictures, he was not rendering professional services.
Again, the statutory and commonsense definition refers to devices that aid patient's oral health and could include cosmetic devices that are consensually installed. Neither definition applies to the tusks. The mere fact that the boar tusks were produced with dental techniques does not place them within the scope of the statute.
¶ 92 The majority's conclusion that Woo's insertion of faux boar tusks into an unsuspecting patient and prying her eyes open for a series of humiliating photographs was "integrated into and inseparable from the overall *473 procedure" is an improper construction of "dental services" under the insurance policy and our case law. Majority at 461. Such reasoning erroneously converts our mandate of broad insurance coverage into total coverage. Cf. E-Z Loader, 106 Wash.2d at 907, 726 P.2d 439; see also Butzberger, 151 Wash.2d at 401, 89 P.3d 689. Under the majority's analysis, no act is outside the scope of the policy, no matter how tortious, as long as the victim is anesthetized and sitting in a dentist's chair. Such reasoning belies the fundamental principles of insurance underwriting where inconceivable; tortious activity must be excluded from coverage. I would hold that there is no statutory basis for coverage under any section of RCW 18.32.020.
¶ 93 Next, the majority asserts that Blakeslee was improperly applied to the instant case by the Court of Appeals. See Standard Fire Ins. Co. v. Blakeslee, 54 Wash.App. 1, 771 P.2d 1172 (1989); majority at 461. Blakeslee stands for the proposition that when defining "professional liability insurance coverage in cases involving sexual misconduct during dental or medical procedures, `courts look to the act itself, rather than the title of the party performing the act or the place where the act occurred.'" Woo, 128 Wash. App. at 103, 114 P.3d 681 (quoting Blakeslee, 54 Wash.App. at 9, 771 P.2d 1172). In my view, the Court of Appeals properly applied the Blakeslee rationale to the instant case, holding that the mere fact the "joke" took place within a dental office is not sufficient. Id. Further, Woo's behavior was not a "legitimate course of treatment" merely because it occurred in a dentist's chair. Id. at 104, 114 P.3d 681.
¶ 94 Blakeslee held that the insurer had no duty to indemnify the insured dentist in a suit alleging that the dentist lifted his patient's shirt, fondled her while she was anesthetized, and then proceeded to fill her cavities. 54 Wash.App. at 2-3, 771 P.2d 1172. Similarly, Woo may have begun a dental procedure, but he stopped providing dental services and began his intentional "practical joke," inserting tusks and taking crass pictures. Only later, did Woo resume legitimate dental services by installing replacement teeth. Inserting boar tusks into an unwitting patient is not a "legitimate course of treatment," even if Woo's intent was not to physically injure but only to humiliate. Id. at 9, 771 P.2d 1172.
¶ 95 The majority attempts to limit Blakeslee's significance by asserting "that application of Blakeslee to other contexts could inappropriately narrow the duty to defend." Majority at 461-62 (arguing that the sexual assault rationale in Blakeslee is applicable only to the narrower duty to indemnify). I disagree. Applying Blakeslee in the instant case does not narrow the duty to defend; it merely affirms the commonsense conclusion that the duty to defend extends only to "legitimate courses of treatment" and not to intentional tortious activities. Blakeslee, 54 Wash.App. at 9, 771 P.2d 1172.
¶ 96 Clearly, the personal privacy concerns inherent in the Blakeslee decision are also present in the nonsexual humiliation of an anesthetized patient. See Woo, 128 Wash. App. at 104, 114 P.3d 681 ("like Blakeslee, Dr. Woo took advantage of his patient's anesthetized state to take actions for his own purposes rather than for her treatment"). Ms. Alberts' injuries do not arise from the practice of dentistry or any legitimate course of treatment, but from an unauthorized stunt performed on an unconscious employee. See Woo, 128 Wash.App. at 104, 114 P.3d 681. This legal issue is not "fairly debatable" and Fireman's correctly relied on Blakeslee's general proposition that our inquiry is focused only on the act, not the profession of the actor. Blakeslee, 54 Wash.App. at 9, 771 P.2d 1172; see majority at 462.
¶ 97 In sum, Woo's "joke" is easily separated from the legitimate course of treatment (the permanent replacement of two baby teeth). Under Blakeslee, and under a commonsense interpretation of the insurance policy, these separate actions do not fall under any covered provision of Woo's professional liability policy.[6]
*474 General Liability
¶ 98 Woo argues that his questionable behavior should also be covered under the general liability provision of his policy, specifically pointing to the (1) bodily injury and (2) personal injury portions.[7]See Br. of Resp't at 39-42. I will examine each provision of the policy by applying the "average person purchasing insurance" test from Butzberger.
¶ 99 Woo contends that his behavior should be construed as an "accident" and cites Ms. Alberts' allegation of accidental touching as proof. Woo further contends that Ms. Alberts' injuries could be considered accidental because he did not intend the severe emotional distress suffered by Ms. Alberts.[8] Br. of Resp't at 39-42. Fireman's disagrees, arguing that the inclusion of alternative theories of liability does not change the fact that Ms. Alberts alleged that Woo's actions were intentional, not accidental.
¶ 100 The insured must be given the benefit of the doubt if the complaint alleges acts that are conceivably covered by the insurance policy. See Truck Ins. Exch., 147 Wash.2d at 761, 58 P.3d 276. However, the facts of this case are undisputed and require a holding of noncoverage. The complaint alleged intentional acts by Woo, regardless of the complaint's several alternative theories, which are common in notice pleading. The plaintiff's argument should not be prejudiced because she asserted alternative theories of liability.
¶ 101 Woo's policy covers only bodily injury that is caused by an "accident," a statutorily defined term. Clearly, Woo intended the insertion of the boar tusks and taking of the photographs; this was no accident. A commonsense reading of the policy does not allow such actions or behavior to be considered as "accidental" in order to find coverage, regardless of whether he intended to give her the photos. The majority engages in faulty analysis by suggesting that the consequences of Woo's actions must also be "expected or intended." Majority at 465.
¶ 102 This is simply wrong because the "expected or intended" language in the policy refers to the actual "circumstance, event or happening" and is not dependent on the victim's response. CP at 85. Thus, the response to the prank is not the subject of our bodily injury coverage analysis. Rather, we need only examine Woo's actions to determine if they were intentional or not. Woo ordered and prepared the boar tusks days in advance. This premeditation is prima facie evidence of a planned event, not an accident. In sum, Fireman's did not have a duty to defend Woo intentional actions under the bodily injury portion of the general liability provision.[9]
¶ 103 Next, the Woo argues for general liability coverage under the personal liability portion of the policy. Fireman's has no duty to defend Woo under the general liability provision if either (1) the "occurrence" was not an "accident" or (2) the "accident" did not arise from a "business activity."
¶ 104 Consistent with my bodily injury policy analysis, supra, Woo's personal injury *475 coverage claim also fails because his behavior was not an "accident." Further, I agree with the Court of Appeals that Woo's conduct did not arise from a "business activity." The court explains in relevant part:
the activities involved here  ordering boar tusks, placing them in a patient's mouth, taking pictures, and telling the patient that the tusks and pictures were `a trophy to take home'  are not incident to providing the professional dental services of administering anesthesia, removing teeth, and fitting temporary false teeth. Thus, any `personal injury' alleged in the Alberts' complaint did not arise from Dr. Woo's business.
Woo, 128 Wash.App. at 107-08, 114 P.3d 681 (citing Jackson v. Frisard, 685 So.2d 622, 629 (La.App.1996) (concluding that the "horseplay" conduct of striking a fellow employee on the back was the type of activity which was ordinarily incident to nonbusiness pursuits)).
¶ 105 No reasonable person would consider Woo's administering an anesthetic, inserting boar tusks into her mouth, and taking pictures of the disturbing incident, to legitimately "arise out of [the dental] business." CP at 74. There is no benefit to a dental business from such activity. The stunt was a wholly personal and likely tortious undertaking. Under these circumstances, the activities incident to the "prank" were all nonbusiness actions, and Fireman's had no duty to defend under the general liability provision.

ATTORNEY FEES AND COSTS
¶ 106 I would not award Woo attorney fees because I would affirm the Court of Appeals ruling. See RAP 18.1.

CONCLUSION
¶ 107 The perpetrator of a humiliating "joke" who inserted faux boar tusks into the mouth of an anesthetized patient will receive $750,000 because he happens to be a dentist with a professional liability insurance policy. To put that figure in context, the real victim in this case was paid only $250,000 for her distress and anguish.
¶ 108 In order to achieve this outcome, the majority misapplies case law that requires "we give it [an insurance policy] the same construction that an `average person purchasing insurance' would give the contract." Majority at 459; Butzberger, 151 Wash.2d at 401, 89 P.3d 689. I submit that the "average person" would conclude that the unauthorized insertion of faux boar tusks into the mouth of an anesthetized patient are not "dental services" as defined in the statute and that such actions are not covered by this insurance policy. The majority rewards the perpetrator for his unprofessional behavior  giving Woo more payment from the insurer for unsubstantiated damages than the real victim received for her documented trauma. Because insurance spreads risks and costs  subject to investment return  Washington's dentist professionals and their patients will ultimately pay the bill. Neither the insurance policy here nor our statute supports this result. I dissent.
I CONCUR: GERRY L. ALEXANDER, Chief Justice.
NOTES
[1] Woo originally sued Fireman's, National Surety Corporation (a corporate affiliate of Fireman's and provider of Woo's professional, employment practices, and general liability coverage), Depositors Insurance Company (Woo's homeowner's and personal excess liability insurer), and the Pacific Underwriters Corporation (Woo's insurance broker). Fireman's stipulated that it would take responsibility for the acts and omissions of its corporate affiliate, National Surety. Depositors defended Woo on a reservation of rights, obtained a partial summary judgment, and assigned its rights to Woo. Woo voluntarily dismissed Pacific Underwriters from the suit.
[2] Woo claims he was originally planning to show the boar tusk flippers to Alberts at the time of the procedure while she was under local anesthetic. He claims, however, that because Alberts asked for a general anesthetic the morning of the procedure, he decided instead to put them in her mouth while she was under general anesthesia, take photographs, and show the photographs to her afterward.
[3] A complete copy of the insurance policy is included in the record. See Def. Ex. 40. Pages of defendant exhibit 40 are designated as "NSW" and are numbered from 000001 to 000112. All references to the insurance policy in this opinion will use that designation. In addition, all boldface emphasis contained in the exhibit has been omitted.
[4] Woo moved for partial summary judgment arguing that Fireman's breached its duty to defend him in the tort action against Alberts. Fireman's sought summary dismissal of Woo's claims.
[5] Fireman's argues that we should adopt a "reasonable expectations" standard in determining whether an insurer has a duty to defend an insured. Suppl. Br. of Resp'ts at 3 (citing E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 907, 726 P.2d 439 (1986)). It argues "an insurer has no duty to defend when the insured can have no reasonable expectation of coverage." Id. It also suggests the Court of Appeals adopted such a test when it concluded, "[n]o reasonable person could believe that a dentist would diagnose or treat a dental problem by placing boar tusks in the mouth while the patient was under anesthesia in order to take pictures with which to ridicule the patient." Id.; Woo, 128 Wash.App. at 103, 114 P.3d 681. Fireman's misreads the Court of Appeals' statement. The court was referring to whether a reasonable patient would believe that the dentist would put boar tusks in her mouth whereas Fireman's refers to whether a reasonable insured would expect his policy to provide coverage. In any case, neither comports with our established rule regarding the duty to defend, and we decline to adopt Fireman's reasoning.
[6] Blakeslee expressly recognized a distinction between factual situations in which sexual contact is necessitated by the treatment being provided and those in which it is not, citing a case involving improper sexual contact by a gynecologist. Blakeslee, 54 Wash.App. at 9, 771 P.2d 1172 (citing St. Paul Fire & Marine Ins. Co. v. Asbury, 149 Ariz. 565, 720 P.2d 540 (Ct.App.1986)). The Asbury court concluded that because the improper sexual contact was "intertwined with and inseparable from" a gynecologist's services, it fell within the gynecologist's professional liability policy. Id. Although the Blakeslee court rejected Asbury, we note that the facts here are more analogous to those in Asbury than they are to Blakeslee. Woo's insertion of the boar tusk flippers was intertwined with and inseparable from the real treatment he performed on Alberts whereas the sexual contact by the dentist in Blakeslee was not.
[7] Woo also takes issue with the Court of Appeals' statement that Fireman's had no duty to defend him under the employment practices liability provision if it determined the complaint alleged no "cognizable cause of action." Pet. for Review at 15-17 (citing Woo, 128 Wash.App. at 105, 114 P.3d 681). He notes that the duty to defend focuses on "the allegations of the complaint and the policy, not on whether a claim happens to be `cognizable.'" Pet. for Review at 17. The insurance policy states that Fireman's will "defend any claim brought against you . . . seeking damages that are covered under this section of this policy . . . even if the allegations of the claim are groundless, false or fraudulent." NSW at 000094 (emphasis added). Woo seems to be suggesting that insurers should not be involved in determining whether claims are legally cognizable, but that concern does not change the fact that Alberts' complaint did not allege a claim for wrongful discharge as defined by Woo's insurance policy. Therefore, we need not reach this argument.
[8] Woo also argues that Fireman's denial of coverage under the general liability provision contradicts its denial of coverage under the professional liability provision, calling Fireman's denial of coverage a "flip flop." Pet. for Review at 12. He claims Fireman's denied coverage under the professional liability provision because Woo was not providing dental services and simultaneously denied coverage under the general liability provision because Woo was providing professional services. Id.; Pl.Ex. 25, at 9. Fireman's does appear to have denied coverage under the two provisions for contradictory reasons but because this case does not involve Fireman's duty to indemnify, we need not reach this issue.
[9] In her complaint, Alberts alleged facts that arguably constitute bodily harm, such as acute and chronic depression, anxiety, panic attacks, nightmares, and suicidal ideation.
[10] Amicus WSTLA Foundation also urges us to address the broader issue of whether practical jokes generally fall outside an insurer's duty to defend. It argues that the Court of Appeals ruling inappropriately implied that practical jokes are outside insurance coverage as a matter of law. It also argues that such a holding disregards the principle of fortuityin other words, practical joking cannot be considered outside insurance coverage if no injury is intended. We decline to reach the broad issue urged by WSTLA Foundation because we have limited briefing on it and need not reach it to resolve the specific case before us. Moreover, because the issue was raised only by amicus curiae, we need not consider it. Seeley v. State, 132 Wash.2d 776, 808 n. 20, 940 P.2d 604 (1997).
[11] It is unclear why Woo cites Amazon. com as the basis for his claim of attorney fees and costs rather than Olympic Steamship. In Amazon. com, American Dynasty sued Atlantic claiming that Atlantic should have defended Amazon.com. 120 Wash.App. at 614, 85 P.3d 974. American Dynasty prevailed on appeal and requested attorney fees under Olympic Steamship. Id. at 619, 85 P.3d 974. The court held that as an excess insurer, American Dynasty had the same rights as the insured and was entitled to fees. Id. In this case, Woo is the insured, not an excess insurer. Woo, 128 Wash.App. at 97, 114 P.3d 681.
[1] Woo v. Fireman's Fund Ins. Co., 128 Wash.App. 95, 97, 114 P.3d 681 (2005).
[2] Dr. Woo's actions are not fairly within the terms of this policy, and extending coverage results in an "absurd conclusion." See E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 907, 726 P.2d 439 (1986). For example, any dentist is covered under the majority if he or she chooses to insert unauthorized objects into unconscious patients, taking pictures of the event, as long as it is done in a jovial manner and under the guise of a legitimate procedure. Giving liability coverage for this malicious, intentional act is "nonsensical or ineffective." Id.
[3] The professional liability insurance provision provides protection for damages "that result from rendering or failing to render dental services," including "all services which are performed in the practice of the dentistry profession as defined in the business and professional codes of the state where you are licensed." Clerk's Papers (CP) at 140, 162.
[4] RCW 18.32.020:

A person practices dentistry, within the meaning of this chapter, who (1) represents himself as being able to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, or jaw, or (2) offers or undertakes by any means or methods to diagnose, treat, remove stains or concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same, or take impressions of the teeth or jaw, or (3) owns, maintains or operates an office for the practice of dentistry, or (4) engages in any of the practices included in the curricula of recognized and approved dental schools or colleges, or (5) professes to the public by any method to furnish, supply, construct, reproduce, or repair any prosthetic denture, bridge, appliance, or other structure to be worn in the human mouth.
(Emphasis added.)
[5] See Resp'ts' Suppl. Citation of Authorities from Oral Argument, Ex. A at 545-46:

Q: And the reason why the mouth was opened, the eyes were propped open, took pictures is because that was part of the practical joke that you were going to show Tina later.
A: As far as the eye goes it could be. I don't know why. Could be we checking the eye, could be the staff thought it would be more funny so they do that.
. . . .
Question: "Her eyes would ordinarily be closed at this point in the anesthesia?
Answer: Yes, yes."
[6] The majority notes that the duty to defend "arises based on the insured's potential for liability and whether allegations in the complaint could conceivably impose liability on the insured." Majority at 463 (emphasis original) (citing Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 760, 58 P.3d 276 (2002)). I agree. But even when construed liberally, Woo's actions must be conceivable to the reasonable average purchaser. Woo fails this objective test.
[7] "Bodily Injury" is defined as "bodily harm, sickness or disease caused by an occurrence." NSW at 000032 (attach. to Def. Ex. 40). An "Occurrence" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conductions." Id. at 000045. An "Accident" is defined as a "fortuitous circumstance, event or happening that takes place and is neither expected, nor intended from the standpoint of the insured." Id. at 000043.
[8] Dr. Woo argues that he did not intend to give photos to Ms. Alberts, and the presentation of the photos could be considered an accident. I disagree, as the entire scheme to humiliate Ms. Alberts was not dependent on the photos. The disturbing photos are only one part of Woo's intentional plan and do not alter the knowing nature of his behavior.
[9] The majority argues that Woo's taunts regarding Ms. Alberts' pig and the "joke" were all part of one "continuous or repeated exposure to substantially the same general harmful conditions" and should be covered under the policy. CP at 87; majority at 465. This is incorrect, as no reasonable person would expect the unsettling taunting to result in the nonconsensual insertion of faux animal tusks while under anesthesia. The leap of logic required to accept such a claim is both herculean and unnecessary.