JOSEPH SUITT
v.
CRAIG WEBRE, SHERIFF FOR THE PARISH OF LAFOURCHE AND RICHARD LEWIS.
No. 2009 CA 1507.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication
JOAN M. MALBROUGH, KATHRYN S. LIRETTE, VANESSA L. ZERINGUE, AMANDA L. MUSTIN, Gray, LA. Counsel for Plaintiff/Appellant, Joseph Suitt.
DONALD F. HARANG, JR., Larose, LA, Counsel for Defendant/Appellee, Craig Webre, Sheriff for the Parish of Lafourche.
JAMES D. "BUDDY" CALDWELL, Attorney General, BOB FINKELSTEIN, Assistant Attorney General, New Orleans, LA, Counsel for Intervenor, State of Louisiana, Office of the Governor, Division of Administration, Office of Risk Management.
Before: DOWNING, GAIDRY and McCLENDON, JJ.
DOWNING, J.
Joseph Suitt, a patrol officer at Nicholls State University, was injured in a training simulation conducted by the Lafourche Parish Sheriffs Office Academy. Suitt filed a negligence action against Craig Webre, Sheriff for the Parish of Lafourche o/b/o the Sheriffs Office for injuries allegedly resulting from the failure to provide proper training to the participants. Suitt also named Deputy Richard Lewis as a defendant for recklessly tackling him in such a manner to cause injury. At the conclusion of Suitt's case in chief, the trial court dismissed the suit on defendants' motion for involuntary dismissal. Judgment was rendered and Suitt appealed. We affirm for the following reasons.

FACTS AND PROCEDURAL HISTORY
Joseph Suitt began working for the Nicholls campus police in August 2006. To advance his career he was required to become Police Officer Standard Training (P.O.S.T.) certified. He began his cadet training on January 13, 2007 at the Lafourche Sheriffs Office Academy.
The first day of training involved the cadet's participation in a mock barroom scene. Three cadets at a time were told to enter a simulated barroom to break up a fight. The room was equipped with padded walls and padded floor. The cadets were each given helmets with face shields and protective body gear that covered their necks and torsos to the waist. The participating cadets were also given batons and fake handguns. The mock patrons were also equipped with additional padding to protect their buttocks and legs. All participants were instructed to yell the word "red" to stop the action in the event they needed help.
The scenario at issue began when Suitt and two other cadets entered the simulation room. The other cadets went across the room where two patrons were fighting. Suitt, who is 5'8" tall and weighs 140 lbs, said that he noticed Richard Lewis, who is 6'9" tall and weighs 350 pounds, standing near the doorway. Suitt said he decided to approach Lewis and keep him standing against the wall so he could not engage in the fray. When Suitt heard that his partners were down, he drew his handgun, and turned around to look. Lewis took this opportunity to grab Suitt from behind, take him to the floor, and fall on top of him. Suitt's right hip and leg were injured during the encounter. Suitt never yelled "red" to stop the simulation because he said he did not realize at the time that he was seriously injured.
A few seconds later, when the scenario was over, Suitt discovered that he could not get off the floor. An ambulance was called, and he was then transported to the hospital where he was diagnosed with a posterior fracture-dislocation of the right hip. His hip dislocation was corrected in surgery that night. Suitt was released the following day, returned to the Academy and finished the classroom portion of training with his class. Later, Suitt had to have an orthroscopic procedure to remove acetablum bone fragments from his hip. After six weeks of physical therapy, he completed his training and was P.O.S.T certified.
Suitt filed suit on December 20, 2007, and the matter was heard May 21-22, 2009. At the conclusion of Suitt's case, the defendants moved for a directed verdict; the trial court stated that it found no breach of duty by the Sheriffs Office or by Richard Lewis and dismissed Suitt's case pursuant to defendants' involuntary dismissal. Suitt appealed alleging that the trial court erred in granting the involuntary dismissal.

ORAL REASONS FOR JUDGMENT
The trial court found that the following allegations against the Sheriffs Office were not proven:
1. The alleged breach of failing to keep reasonable watch over the P.O.S.T. training:
The court stated that it was clear from the video and witness testimony that an attentive supervisor was in place during the scenario. It stated that if any cadet showed signs of distress, the simulation was halted and the protective gear was rearranged if necessary.
2. The alleged breach of duty for failing to see what should have been seen: The court noted that at least one individual was present with a whistle and his primary purpose was to observe and immediately halt the simulation if someone appeared to be injured. Almost immediately when Suitt was taken down to the floor, the simulation was ended.
3. The alleged failure to properly train participating employees:
The court stated that the mock patrons were given guidelines which included orders to not use a closed fist or spearing from the back.
4. The alleged failure to supervise:
The court noted that there was always an individual present that was trained to be alert and attentive during the simulation.
5. The alleged other acts and omissions:
The court found that no evidence was presented to show that padding on Sukt's lower body would have prevented Suitt's injury.
The trial court also found that the alleged reckless behavior of Richard Lewis was not proven. The court's oral reasons state that the video evidence showed that Deputy Lewis approached Suitt from the rear and attacked his torso by grabbing his vest, which brought Suitt down to the floor where Lewis fell on top of him. The court determined that this was not a tackle. It also concluded that the fact that Lewis was larger in size, stature, and weight compared to Suitt did not create a breach of duty by either Lewis or the Sheriff.

INVOLUNTARY DISMISSAL STANDARD OF REVIEW
A trial court may grant an involuntary dismissal as to any party if, after the plaintiff has completed the presentation of his evidence, the court finds that upon the facts and the law that plaintiff has shown no right to relief. LSA-C.C.P. art. 1672(B). A court of appeal may not set aside a trial court's finding of fact unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

DISCUSSION
The duty/risk analysis is appropriate to determine legal responsibility in negligence cases. Boy kin v. Louisiana Transit Company, Inc., 96-1932, p. 8 (La. 3/4/98) 707 So.2d 1225, 1230. This determination usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform to the appropriate standard; (2) proof that the defendant's conduct failed to conform to that standard; (3) proof that the substandard conduct was a cause-in-fact of plaintiffs injuries; (4) proof that the substandard conduct was the legal cause of the injury; and (5) proof of actual damage. Id.
There are two potential bases for imposing legal responsibility on the Sheriffs Office: (1) primary liability under LSA-C.C. art. 2315 and (2) vicarious liability based upon LSA-C.C. art. 2320, which provides that an employer is liable for the tortious acts of its employees in the exercise of the functions in which they are employed. Roberts v. Benoit, 605 So.2d 1032, 1036 (La. 1991).
The thrust of Suitt's argument is that the Sheriff breached his duty because he did not properly prepare the cadets or the mock patrons for the fight scenario. He also argues the Sheriff did not provide the cadets, unlike the mock patrons, with the proper equipment to engage in such a dangerous simulation.
The Sheriff has a duty to exercise reasonable care in training and conducting the exercise. Roberts, 605 So.2d 1044. The inquiry becomes whether the injury plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty. Id. Generally, the scope of protection inquiry is "fact-sensitive." Id. at 1045.
Here, there was a trained person in a supervisory position to stop the action if injury did occur. The cadets were given a code word to stop the scenario if they were hurt. Further, a safety supervisor was required to blow the whistle when someone appeared to be injured. Deputy Lewis testified that they were not to use closed fists or to tackle or spear the cadet in the back. The trial court stated, and we agree, that law enforcement is a dangerous profession and the officers have to be prepared. The trial court concluded that there is a valid purpose for this kind of training, which includes diligence being impressed upon the cadets. Suitt testified that he was made aware that there was risk of injury. Here, the court heard the testimony of Suitt where he admitted that he expected to encounter strenuous physical activity during his training. He admitted that he was informed that there was a possibility that he might be injured.
Suitt also argues that the Sheriff should have given the cadets protective gear for their lower limbs. However, he presented absolutely no evidence to demonstrate how the additional padding would have prevented his hip injury. We conclude that the trial court did not err in determining that Suitt failed to meet his burden of proof to show that the Sheriff breached its duty in this case.
We next address Deputy Lewis's liability. The trial court found that Deputy Lewis neither recklessly nor intentionally harmed Suitt. Suitt argues that Lewis's aggressive attack upon him rose to the level of an intentional battery. Suitt claims that Lewis should have realized that injury was foreseeable because of the size disparity between Lewis and himself.
We disagree. The video clearly shows Deputy Lewis standing against the wall until he had the opportunity to take advantage of a distracted Suitt. No evidence was presented to indicate that Deputy Lewis used tactics or maneuvers exceeding the training guidelines. Moreover, the trial court observed that the simulation was geared to be as lifelike as possible. We therefore conclude that the trial court did not err in dismissing the case against defendant Richard Lewis.
Accordingly, we find no error in the trial court's entry of involuntary dismissal against Suitt based on its findings that Suitt did not meet his burden of proof to show legal responsibility on the Sheriffs Office either for primary liability under LSA-C.C. art. 2315 or for vicarious liability under LSA-Civil Code article 2320. The assignments of error are without merit.

DECREE
For the above reasons, we affirm the trial court judgment dismissing the lawsuit pursuant to a motion for involuntary dismissal. The cost associated with this proceeding is assessed against Joseph Suitt.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
I concur in this matter to distinguish two cases cited by plaintiff, but not addressed in the majority opinion, in which damages were awarded officers who were injured while participating in training exercises.
In Jackson v. Frisard, 96-0547 (La.App. 1 Cir. 12/20/96), 685 So.2d 622, writ denied, 97-0193, 97-0201 (La. 3/14/97), 689 So.2d 1386, 1387, an officer was injured while attending an in-service defensive tactics training session at the State Police Training Academy. In affirming the trial court's award of damages, this court determined that a reasonable factual basis existed in the record to establish that the officer was injured by another officer's horseplay. Jackson, 96-0547 at p. 9, 685 So.2d at 626.
In Cole v. Dep't of Pub. Safety and Corrections, 01-2123 (La. 9/4/02), 825 So.2d 1134, the court determined that a corrections officer, who consented to participate in an "angry crowd" scenario during training at a correctional center, did not consent to battery where the testimony from the participating officers revealed that the activity was supposed to be a low key, half speed exercise intended to practice formations and movements on the field. Cole, 01-2123 at p. 12, 825 So.2d at 1143. Although simulated strikes were to be conducted, no one expected a full force altercation with unpadded batons that was "unnecessary and unanticipated." Id. Moreover, even though the officer shouted the code word "red," which was supposed to stop the activity, he continued to be hit, despite the loss of protective head gear. 01-2123 at pp. 2-3, 825 So.2d at 1137.
Although plaintiff in this case was injured during the training exercise, he does not allege that Deputy Lewis was engaged in horseplay nor did he show that Deputy Lewis utilized unanticipated force during the exercise. Further, as noted by the majority, no evidence was presented to indicate that Deputy Lewis used any tactics or maneuvers exceeding the training guidelines. Additionally, plaintiff never provided any signal during the training to terminate the training activity. Accordingly, Jackson and Cole are distinguishable from the facts of this case. Therefore, I respectfully concur.