STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0124

KENNETH CHEVIS

VERSUS

ERNESTO RIVERA AND APACHE INDUSTRIAL SERVICES, INC.

Judgment Rendered: SEP 2 4 2021

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. C671168

Honorable Donald R. Johnson, Judge Presiding

* * * * * *

| | |
|---|---|
| Lindsay C. Rabalais<br>D. Scott Rainwater<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>Apache Industrial Services, Inc. |
| Pride J. Doran<br>Quincy L. Cawthorne<br>Opelousas, LA | Counsel for Plaintiff/Appellee<br>Kenneth Chevis |

* * * * * *

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

**McCLENDON, J.**

This appeal is taken from the trial court's judgment denying summary judgment in favor of defendant-employer and granting partial summary judgment in favor of plaintiff-employee. For the reasons that follow, we reverse in part.

## FACTS AND PROCEDURAL HISTORY

On April 4, 2018, Kenneth Chevis and Ernesto Rivera were disassembling scaffolding in the course and scope of their employment with Apache Industrial Services, Inc. (Apache). Chevis paused working to check the time on his watch, at which time Rivera verbally admonished Chevis. When Chevis did not respond to Rivera's verbal admonishment, Rivera used a piece of scaffolding material to make contact with Chevis's hardhat (the April 4, 2018 incident).

Subsequently, Chevis filed the instant tort suit against Apache and Rivera in the 19th Judicial District Court, alleging that he was injured as a result of the April 4, 2018 incident. Chevis described Rivera's actions as "intentional and negligent," and sought damages accordingly. Litigation ensued.

Preceding this appeal, the parties filed competing motions for summary judgment. Chevis filed a motion for partial summary judgment alleging that Rivera's action at the time of the April 4, 2018 incident constituted an intentional tort and that Apache was vicariously liable for Rivera's action.[1] Chevis attached his November 14, 2018 deposition and his petition for damages in support of his motion. Apache filed an opposition to Chevis's motion, attaching as exhibits Rivera's affidavit and Chevis's September 12, 2019 deposition.[2] Additionally, Apache filed its own motion for summary judgment seeking dismissal of Chevis's tort suit on the basis that Chevis's exclusive remedy was through workers' compensation. Apache argued that Chevis could not produce evidence that his

---

[1] Chevis's motion for partial summary judgment also sought judgment that his injuries were causally related to Rivera's action and that the medical bills he incurred were medically necessary and reasonable. The parties agreed to continue these issues to a later date to allow the defendants additional time to conduct discovery (agreement to continue medical issues). Thus, these issues are not before us on appeal.

[2] A March 19, 2020 letter attached as an additional exhibit in support of Apache's opposition to Chevis's motion for partial summary judgment documented the parties' agreement to continue medical issues.

2

workplace injury was the result of an intentional act as required to recover outside of workers' compensation. Apache attached as exhibits Chevis's November 14, 2018 deposition, Chevis's September 12, 2019 deposition, Rivera's affidavit, and the affidavit of Chris Gascon, who supervised Apache's handling of Chevis's claim in his role as Apache's Safety Director.

The parties' competing motions came before the trial court for hearing on June 29, 2020. The trial court ruled in favor of Chevis and against Apache. A written judgment was executed on August 12, 2020, which provided in pertinent part:

> IT IS HEREBY ORDERED that the Motion for Summary Judgment filed on behalf of Defendant, Apache, is DENIED.
>
> IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED in favor of Plaintiff and against Defendant, Apache, holding (1) the incident that occurred on April 4, 2018 between Plaintiff, Kenneth Chevis, and Defendant, Ernesto Rivera, constituted an intentional tort under applicable Louisiana law, and (2) Defendant, Apache, is vicariously liable for the intentional tort committed by Defendant, Ernesto Rivera, onto Plaintiff, Kenneth Chevis, on April 4, 2018.
>
> IT IS FURTHER ORDERED that in accordance with Louisiana [Code of Civil Procedure] Article 1915(B)(1), this Judgment is designated as a final judgment after an express determination that there is no just reason for delay.

Apache has appealed, challenging each ruling contained in the August 12, 2020 judgment.[3] Apache asserts that the trial court erred: (1) in denying Apache's motion for summary judgment seeking the dismissal of the instant suit on the basis that Chevis's exclusive remedy is through workers' compensation; (2) in granting that portion of Chevis's motion for partial summary judgment seeking a ruling that the April 4, 2018 incident constituted an intentional act; and, (3) in granting that portion of Chevis's motion for partial summary judgment seeking a ruling that Apache is vicariously liable for Rivera's action.

---

[3] Louisiana Code of Civil Procedure article 1915(B) provides that a partial summary judgment rendered pursuant to LSA-C.C.P. art. 966(E) may be immediately appealed during ongoing litigation only if it has been properly designated as a final judgment by the trial court. **Fils v. Allstate Ins. Co.**, 2015-0357 (La.App. 1 Cir. 12/23/15), 186 So.3d 152, 155. Having reviewed all of the appropriate factors, we conclude that the trial court properly certified the August 12, 2020 judgment as final. See **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-1123.

3

## SUMMARY JUDGMENT

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 2018-1148 (La.App. 1 Cir. 2/28/19), 274 So.3d 583, 587. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The burden of proof is on the mover. LSA-C.C.P. art. 966(D)(1).

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. **Sanders v. Swiftships, Inc.**, 2017-0774 (La.App. 1 Cir. 9/20/18), ___ So.3d ___, 2018 WL 4520091, *4, writ denied, 2018-1912 (La. 1/18/19), 262 So.3d 289. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La.App. 1 Cir. 2/21/20), 298 So.3d 191, 194-95, writ denied, 2020-00480 (La. 6/22/20), 297 So.3d 773. A material fact is one that potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. **Juneau v. Louisiana Tennis Association, Inc.**, 2019-0964 (La.App. 1 Cir. 2/27/20), 300 So.3d 12, 17. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Galliano v. CB & I, LLC**, 2018-0844 (La.App. 1 Cir. 4/10/19), 275 So.3d 906, 909.

When deciding whether to grant or deny a motion for summary judgment, the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence. **Leisure Recreation & Entertainment, Inc. v. First**

4

**Guaranty Bank**, 2019-1698 (La.App. 1 Cir. 2/11/21), 317 So.3d 809, 823. Any doubt as to a dispute regarding a genuine issue of material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Collins**, 298 So.3d at 195.

## THE INTENTIONAL ACT EXCEPTION

Generally, an employee's exclusive remedy for injuries suffered during the course and scope of employment is through the Workers' Compensation Act (the Act), which provides immunity from civil liability in favor of an employer. However, an exception to the general rule is set forth in LSA-R.S. 23:1032(B): the exclusivity provisions of the Act do not apply when an employee is injured as a result of an intentional act committed by a co-employee during the course and scope of employment (intentional act exception).[4] **Cole v. State Department of Public Safety & Corrections**, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1138-39. It is clear from a review of legislative history and jurisprudence interpreting the meaning of intent that the intentional act exception to the exclusivity of the Act in general is to be applied in very strict and limited circumstances. **Cole**, 825 So.2d at 1141. Pursuant to these legal precepts, Chevis's right to pursue the instant tort suit against Apache depends on whether the April 4, 2018 incident in which Chevis was injured constituted an intentional act subject to the very narrow intentional act exception. Accordingly, we first consider whether the trial court properly found that Rivera's actions constituted an intentional act. See LSA-C.C.P. art. 966(A)(3).

In **Bazley v. Tortorich**, 397 So.2d 475, 480 (La. 1981), the Louisiana Supreme Court defined "intent," in the context of the intentional act exception, to

---

[4] Louisiana Revised Statutes 23:1032, provides, in pertinent part:

> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages....
>
> * * *
>
> B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

5

mean that the actor either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knew that that result was substantially certain to follow from his conduct, whatever his desire was as to that result. **Bazley**, 397 So.2d at 482. Subsequent jurisprudential discussions of the "substantial certainty" requirement have established that believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation. **Miller v. Sattler Supply Co., Inc.**, 2013-2558 (La. 1/27/14), 132 So.3d 386, 387. "Substantially certain to follow" requires more than a reasonable probability that an injury will occur, and "certain" has been defined to mean "inevitable" or "incapable of failing." **Stanley v. Airgas-Southwest, Inc.**, 2015-0274 (La. 4/24/15), 171 So.3d 915, 916. Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. **Miller**, 132 So.3d at 387.

In support of his motion for partial summary judgment, Chevis relies on **Caudle v. Betts**, 512 So.2d 389 (La. 1987), which considered the intentional act exception in the context of the intentional tort of battery. In **Caudle**, the plaintiff employee sought to recover damages sustained when his employer's chief executive officer (CEO) shocked the plaintiff's neck with an electric automobile condenser as a practical joke during horseplay. **Caudle** explained that although workers' compensation shall be an employee's exclusive remedy against his employer for an unintentional injury covered by the act, when an employee seeks to recover from his employer for an intentional tort such as battery, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder. **Caudle**, 512 So.2d at 390-91. Defining battery as "A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact," the **Caudle** Court found that the

electrical shock constituted the intentional tort of battery.[5] **Caudle** further clarified that the intent with which tort liability is concerned need not be malicious or hostile, nor need it be an intention to inflict actual damage or do any harm; rather, it is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. **Id.** at 391. Here, Chevis argues that there is no genuine issue of material fact that Rivera intended a harmful and offensive contact to which Chevis did not consent, and that there is no need to establish whether Rivera had malicious intent or desired the consequences of his action. Thus, Chevis maintains that summary judgment should be granted finding Rivera's action constituted the intentional tort of battery under **Caudle**.[6]

In opposition, Apache argues that the issue of whether the April 4, 2018 incident constituted an intentional act subject to the intentional act exception should be resolved by application of the definition of intent set forth in **Bazley**, rather than by application of the **Caudle** analysis. Apache seeks to distinguish **Caudle** from the instant matter by arguing that while the co-employee in **Caudle** did not intend the consequences of his practical joke, he did intentionally shock the employee and intend to cause some harm or pain, whereas in this matter there is no evidence that Rivera intended to cause harm or pain to Chevis. Thus, Apache maintains that the determinative issue is whether Rivera (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knew that that result was substantially certain to follow from his conduct, whatever his desire was as to that result. Apache argues that Chevis cannot meet his burden of proof because he cannot produce any evidence

---

[5] The Supreme Court in **Caudle** specifically found that it was "undisputed that when Mr. Betts shocked the employee, Mr. Caudle, with the condenser, he intended the contact to be offensive and at least slightly painful or harmful." **Caudle v. Betts**, 512 So.2d at 392.

[6] Chevis also cites subsequent cases wherein courts have applied the **Caudle** analysis. See **Jackson v. Frisard**, 96-0547 (La.App. 1 Cir. 12/20/96), 685 So.2d 622, 623-24, writ denied, 97-0193 (La. 3/14/97), 689 So.2d 1386, and writ denied, 97-0201 (La. 3/14/97), 689 So.2d 1387, and **Cole v. State Department of Public Safety and Corrections**, 2001-2123 (La. 9/4/02), 825 So.2d 1134, 1137. However, we note that the factual scenarios presented in all three of these cases are clearly distinguishable from the case before this Court. **Caudle** involved the administration of an intentional shock with an electric condenser; in **Jackson**, the employee was struck in the back with such force that he was "laid out flat" for roughly twenty minutes; and in **Cole**, the worker was struck full force with unpadded batons in a training exercise.

7

establishing either that Rivera consciously desired the physical result of his act, or that Rivera knew the result was substantially certain to follow from his conduct.

The parties do not dispute that the April 4, 2018 incident occurred during the course and scope of Chevis and Rivera's employment, nor do the parties dispute that Rivera intentionally used a piece of scaffolding material to make physical contact with Chevis's hardhat. However, the parties characterize the nature, force, and manner of the contact differently.

During Chevis's November 14, 2018 deposition (2018 deposition), he described the April 4, 2018 incident as follows:

> [Rivera] took the [metal] board and pushed it into my hard hat.
>
> ***
>
> [Rivera] had done hit me in the head with the board. And [the crew of co-employees] started laughing, like it was funny.
>
> ***
>
> [Rivera] took the board, and he had it sitting on top [of] the bar and he pushed it into my hard hat like that (indicating), you know, like kind of playing with me, but he was really serious because all the other guys, they started laughing at me; I almost fell.

When Chevis was asked during his 2018 deposition whether he believed Rivera was tapping him to tell him to hurry up, Chevis answered that he didn't know. Chevis further testified, "That was the only crew I ever had a problem with." When asked whether Rivera and his crew picked on him, Chevis responded affirmatively.

During Chevis's 2019 deposition, he stated, "[Rivera] hit me in the head with the board... he took the board, and he hit it into my hard hat to get my attention kind of"; "[H]e just jabbed into into my head, you know, to get my attention, and like, just to be ugly"; "He did mean to hit me in the head with the board"; and, "I'm like, 'Man, why you hit me in the head with a board?' He like, 'Because you not working... 'I'll do it again if you not working.' And then his guys started laughing." Chevis also recounted that some members of the crew he worked on with Rivera were Rivera's family members. Chevis further stated that on one occasion, Rivera "lied on [him,]" by instructing him to retrieve some material, then reported to the foreman that he didn't know where Chevis was.

8

Rivera's affidavit, submitted by Apache, presents a different scene. Rivera attested:

> At the time of the incident, I was attempting to pass material down to Kenneth Chevis, but he was working slowly, not paying attention, and looking at his watch. I wanted him to work quicker, and he was not responding to my verbal commands, so I tapped him on the head to get him to start working again.

Rivera further testified that his intention when he tapped Chevis on the head "was simply to notify him to return to work," and that he "did not intend [Chevis] any physical harm whatsoever." Rivera's final attestation was, "After the incident, Kenneth Chevis confronted me and I told him that I would tap him on the head again if he wasn't working or responding to verbal commands."

As set forth above, when considering a motion for summary judgment, a trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence. **Leisure Recreation and Entertainment**, 317 So.3d at 823. Instead, when deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible. **Sanders**, 2018 WL 4520091 at *4. In this matter, the record reflects two conflicting versions of the incident at issue. Chevis's testimony is that Rivera "pushed [the scaffolding material]" into his head, and that Rivera "hit" and "jabbed" him, whereas Rivera reports that he "tapped" Chevis. Further, while Rivera's affidavit denies any motivation other than a desire to prod a coworker back to his task, Chevis describes an event that was motivated both by an employment-related dispute and by personal dislike, during which Rivera hit him with scaffolding material while Rivera's family laughed at Chevis.

Having completed a *de novo* review of the record before us, we find that a genuine issue of material fact exists precluding summary judgment as to the issue of whether Rivera's action during the April 4, 2018 incident constituted an intentional act subject to the intentional act exception. Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. **Degueyter v. First American Title Company**, 2017-2163 (La. 9/18/18), 252 So.3d 475. Given the competing and inconsistent descriptions of the force of the contact, the manner in which the

9

contact was made, and the motivation behind the contact, it is apparent that credibility calls and the weighing of evidence is essential for resolution of this issue. Likewise, because Chevis's right to pursue the instant tort suit against Apache depends on whether the April 4, 2018 incident constituted an intentional act subject to the intentional act exception, the trial court properly denied Apache's motion for summary judgment seeking dismissal of Chevis's claim.

## VICARIOUS LIABILITY

Having found that a genuine issue of material fact exists as to whether Rivera's action constituted an intentional act, we find the issue of vicarious liability of Apache to be premature. Accordingly, we vacate the trial court's ruling that Apache is vicariously liable for Rivera's action.

## CONCLUSION

For the reasons set forth above, we reverse that portion of the August 12, 2020 judgment granting the motion of Kenneth Chevis for partial summary judgment and holding that the incident that occurred on April 4, 2018 between Kenneth Chevis and Ernesto Rivera constituted an intentional tort under applicable Louisiana law. We further vacate that portion of the August 12, 2020 judgment granting the motion of Kenneth Chevis for partial summary judgment and holding Apache Industrial Services, Inc. vicariously liable for the April 4, 2018 incident. In all other respects, the judgment is affirmed. Costs are assessed equally between the parties.

**REVERSED IN PART AND AFFIRMED IN PART.**